■ BELLEVUE SOUTH ASSOCIATES, Respondent, v HECKLER ELECTRIC CO., INC., et al., Appellants. — Judgment, Supreme Court, New York County (Leonforte, J.), entered August 24, 1982, which granted petitioner's application to permanently stay arbitration of a dispute, reversed, on the law, and the petition to stay arbitration is dismissed, with costs. On January 30, 1974 the petitioner,

Bellevue South Associates (Bellevue), the owner of a housing construction project known as Henry Phipps Plaza West, entered into a contract with HRH Construction Co. (HRH), a general contractor, to perform general construction work on the project for $33,201,000. On February 4, 1974, HRH entered into a subcontract with Heckler Electric Company (Heckler) under which Heckler agreed to perform and furnish all the work and materials necessary for the electric work at the project for $2,703,000. The contract between Bellevue and HRH contained the following arbitration clause: "All disputes, claims or questions with respect to payments or matters other than the proper performance of the work shall be submitted to arbitration in accordance with the Rules of the American Arbitration Association." Article 29 of the contract provided that: "The Contractor agrees to bind every Subcontractor and every Subcontractor agrees to be bound by the terms of the Contract Documents as far as it is applicable to his work." Article 29 further provided: "The Contractor agrees * * * (f) To give the Subcontractor an opportunity to be present and to submit evidence in any arbitration involving his rights * * * The Contractor and the Subcontractor agree that * * * (i) Nothing in this article shall create any obligation on the part of the Owner to pay or to see to the payment of any sums to any Subcontractor." The subcontract between HRH and Heckler provided in section 5 (cc) that: "All disputes, controversies of claims of any and all kinds which may arise out of, under or in relation to this Agreement, or the breach thereof, except as hereinafter provided, shall be submitted to and settled by arbitration in the City of New York in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award may be entered in any court having jurisdiction thereof." On completion of its work under the subcontract, Heckler determined that it had sustained damages in the amount of $1,147,773.99 arising from its performance of extra work and the occurrence of delays in the work. On July 23, 1980 Heckler commenced arbitration proceedings against HRH to recover this amount. Heckler and HRH thereafter agreed that Bellevue was directly or indirectly responsible for the damages allegedly sustained by Heckler. On March 31, 1981, they entered into a "liquidation agreement" of a kind that we are informed without contradiction has become customary in the construction business. Reciting the intention of the parties to liquidate the contractor's liability to the subcontractor for the subcontractor's claims, the agreement provided in pertinent part: "2. The Contractor agrees to pay and the Subcontractor agrees to accept in full satisfaction, discharge, and liquidation of all of the Subcontractor's Claims the amounts, if any, which the Contractor may recover from the Owner on account of said claims, less any costs incurred in obtaining any such recovery. If no recovery is obtained on account of the Subcontractor's Claims, the Subcontractor agrees to accept in full satisfaction, discharge and liquidation of the Subcontractor's Claims, the Contractor's covenants and obligations under this Agreement, and the Contractor's cooperation in attempting to obtain such recovery as hereinafter provided, and the Subcontractor shall have no further claim against Contractor with respect to the Subcontractor's Claims * * * 3. The Contractor authorizes the Subcontractor to commence and prosecute, through counsel selected by the Subcontractor, such legal actions or arbitration proceedings, as the Subcontractor may determine, in the name of the Contractor against the Owner to obtain recovery of the Subcontractor's Claims. All legal fees and other costs and expenses incurred in connection with such actions or proceedings shall be paid by the Subcontractor and the Subcontractor shall indemnify the Contractor against any liability with respect to any such fees, costs and expenses". On May 20, 1981, HRH, under its new name, City Development Corporation, commenced

arbitration proceedings against Bellevue by serving upon Bellevue's general partner a demand for arbitration which recited as the amount sought to be recovered the same amount which Heckler previously had sought to recover from HRH. The demand recited the nature of the dispute as Bellevue's failure to pay HRH for extra and additional electrical work performed, and for damages incurred due to general delays and interference caused by Bellevue in connection with the construction of the project. Bellevue participated in the arbitration procedure to the extent of joining in the selection of arbitrators, and attending prehearing conferences. At one prehearing conference Bellevue purportedly learned for the first time that the arbitration arose out of the liquidation agreement described above. Thereupon on February 18, 1982 Bellevue commenced a special proceeding pursuant to CPLR 7503 (subd [b]) to permanently stay arbitration on the ground that the demand for arbitration in the name of HRH had been misleading and the claim to be arbitrated was actually that of Heckler, a party with whom Bellevue had no arbitration agreement. Concluding that no arbitrable dispute within the contemplation of the agreement had been set forth, Special Term granted Bellevue's application to stay the arbitration. We disagree, accordingly reverse, deny the motion to stay the arbitration, and dismiss the petition. In *Matter of County of Rockland (Primiano Constr. Co.)* (51 NY2d 1, 5), the Court of Appeals defined the judicial function on a motion to stay arbitration as follows: "It is for the courts to determine whether the parties agreed to submit their disputes to arbitration, if so, whether the particular dispute comes within the scope of their agreement, and finally whether there has been compliance with any condition precedent to access to the arbitration forum." The arbitration clause in the agreement entered into between Bellevue and HRH is of course a broad one, providing for arbitration of "all disputes, claims or questions with respect to payments or matters other than the proper performance of the work". As amplified by the record, the dispute sought to be arbitrated by HRH may be fairly stated in the following terms. HRH seeks to recover from Bellevue for the purpose of remitting to Heckler a sum of money representing alleged extra work performed by Heckler and damages allegedly incurred by Heckler as a result of delays. The sum of money in question was originally the subject of an arbitration proceeding initiated by Heckler against HRH. Concluding that Bellevue was directly or indirectly responsible for the damages allegedly sustained by Heckler, Heckler and HRH agreed to permit HRH to liquidate its liability to Heckler by permitting an arbitration proceeding to be instituted in HRH's name against Bellevue. Whatever may ultimately be determined to be the merit of the claim, it is difficult to perceive the basis on which it can be concluded that the claim does not adequately state a dispute, claim or question "with respect to payments or matters other than the proper performance of the work". Bellevue is undoubtedly correct in its contention that it has no arbitrable dispute with Heckler. But the issue here sought to be arbitrated is not whether Bellevue is obligated to pay a certain sum to Heckler, but rather whether Bellevue is obligated to pay the sum to HRH for the purposes indicated and under the circumstances presented. Upon analysis it becomes apparent that the several arguments presented by Bellevue in support of its application to stay arbitration are addressed to the merit of HRH's claim, and not to whether or not a dispute has been stated within the terms of the broad arbitration clause. But the governing statute is specific that once the court has determined the existence of a dispute within the scope of the arbitration clause, "the court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute." (CPLR 7501.) Significantly Bellevue impliedly concedes that an arbitrable dispute would have been presented if there had been an adjudica-

tion of liability against HRH in the commenced but subsequently settled arbitration between Heckler and HRH, or if HRH had acknowledged a continuing liability to Heckler in connection with the subcontractor's claims. In effect Bellevue claims that such a prior adjudication or acknowledgment of liability is a condition precedent to the arbitration of the claims asserted by HRH against it. But no such condition precedent to the arbitration of a dispute between Bellevue and HRH is explicitly set forth in their agreement. Whether or not HRH may recover the sum sought in the absence of such a prior adjudication or acknowledgment of liability accordingly becomes an issue to be determined by the arbitrators on the basis of their interpretation of the contract. (Cf. *Pearl St. Dev. Corp. v Conduit & Foundation Corp.*, 41 NY2d 167; *Stillman v Stillman*, 80 AD2d 356, affd for reasons stated in opn of Justice Arthur Markewich 55 NY2d 653; *Grossman v Laurence Handprints — N.J.*, 90 AD2d 95; see, also, Siegel, NY Prac, § 589.) Concur — Kupferman, J. P., Sandler, Asch, Silverman and Alexander, JJ.